IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN L. DEWITT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 04-3386-CV-S-NKL |

**ORDER**

Pending before the Court is Plaintiff Benjamin L. DeWitt's ("DeWitt") Motion for Summary Judgment [Doc. 8]. DeWitt seeks judicial review of the Commissioner's denial of his request for disability insurance benefits under Title II of the Social Security Act.

On April 29, 2004, following a hearing, the Administrative Law Judge ("ALJ") found that DeWitt was not entitled to benefits under the Act. On July 15, 2004, the Appeals Council denied DeWitt's request for review of the ALJ's decision. Therefore, the decision of the ALJ stands as the final decision of the Commissioner. Judicial review is appropriate because DeWitt has exhausted his administrative remedies.

After reviewing the entire record, the Court concludes that the record does not substantially support the ALJ's finding that DeWitt is capable of performing work in the national economy. In particular, the ALJ failed to adequately evaluate DeWitt's mental impairments.

On April 22, 2002, Dr. David Lutz performed a comprehensive examination of DeWitt's mental status. Dr. Lutz stated that Mr. DeWitt's responses in normal conversation "were occasionally confused" and that it took him some time to remember the correct month. In addition, Mr. DeWitt had much difficulty reciting the alphabet: it took him forty five seconds to get to the letter 'W', and in that time he still made five errors and two omissions. Dr. Lutz concluded that DeWitt's intellectual functioning was in the "low average to possibly borderline ranges." (Tr. 272.) Dr. Lutz further stated that DeWitt "likely has considerable variability in his skills." (Tr. 272.) Dr. Lutz assessed DeWitt's GAF score at 45, reflecting "[s]evere symptoms." (Tr. 272.) Dr. Lutz concluded that, although DeWitt is capable of understanding and remembering simple instructions, he "may have difficulty with moderately complex and complex instructions." (Tr. 273.) Dr. Lutz further concluded that DeWitt "likely would have difficulty with moderately complex and complex tasks." (Tr. 273.) Finally, Dr. Lutz noted that "neuropsychological testing would be helpful in clarifying [DeWitt's] symptoms and abilities." (Tr. 273.)

After Dr. Lutz prepared his report, he was apparently contacted by Dr. Elissa Lewis from Disability Determination Services. Dr. Lutz recalls the conversation as follows:

> Dr. Lewis indicated that according to medical documentation, a head injury likely did not account for Mr. DeWitt's complaints. She asked in light of this information whether I would like to revise my Medical Source statement. Given this information, I assume that depression, for which [DeWitt] had has [sic] received limited to no treatment, is the basis for his behavior."

(Tr. 267.)

2

Based on his conversation with Dr. Lewis, Dr. Lutz prepared a revised Medical Source statement. The revised statement differs from the original in four respects: (1) the revised statement, unlike the original, indicates that DeWitt is able to understand and remember moderately complex instructions; (2) the revised statement, unlike the original, indicates that DeWitt has the ability to sustain concentration and persistence on moderately complex tasks; (3) the original statement indicates that DeWitt "may have some difficulty adapting to his environment, such as establishing long term goals and traveling in unfamiliar places" (Tr. 273), whereas the revised statement indicates that DeWitt "seemed able to adapt to his environment" (Tr. 267); and (4) the original statement, unlike the revised statement, indicates that "neuropsychological testing would be helpful in clarifying [DeWitt's] symptoms and abilities." (Tr. 273.)

These revisions were significant, and potentially changed the course of this case. Citing Dr. Lutz's revised statement, the ALJ found that DeWitt was capable of following "detailed" instructions. (Tr. 17.) At the hearing, the ALJ repeatedly instructed the vocational expert to assume that DeWitt could follow "detailed" job instructions. (Tr. 369, 372.) The ALJ did not pose any hypothetical questions assuming that DeWitt would be incapable of performing moderately complex tasks. Further, the record suggests that if Dr. Lutz had not revised his opinion, the outcome may have been different: the vocational expert admitted that a person with a GAF score of 45 would be incapable of working.

Unfortunately, because the record sheds no light on what, exactly, was said during the phone conversation between Dr. Lewis and Dr. Lutz, it is unclear why Dr. Lewis chose

3

to make these important revisions to his medical source statement. There is no record of what evidence Dr. Lewis referred to when he suggested that there was evidence indicating that a head injury could not account for DeWitt's complaints. Nor is it clear whether and to what extent Dr. Lewis made the key documents available to Dr. Lutz so that Dr. Lutz could independently evaluate their significance and reach his own informed conclusions. Perhaps most importantly, it is also unclear whether Dr. Lutz fully appreciated his role in the process as an independent evaluator who is not responsible for revising his professional opinions to conform with those of other medical professionals.[1]

In short, the conversation between Dr. Lewis and Dr. Lutz raises a number of important questions that should have been explored by the ALJ. The Court understands that psychologists sometimes change their opinions in light of new evidence, but in this case it is unclear what the new evidence was, and whether the revised opinion was the product of an independent professional decision or of something else.

Upon remand, the ALJ is instructed to explore the circumstances surrounding Dr. Lutz's revision of his original medical source statement. If, after exploring that issue, the ALJ determines that neuropsychological testing would be helpful in clarifying DeWitt's symptoms and abilities, the ALJ is instructed to hold open the record for a reasonable time so that such testing can be performed.

Accordingly, for good cause shown, it is

---

[1] Also troubling is the fact that Dr. Lutz's original medical source statement does not refer to a head injury. Thus, it is unclear why Dr. Lewis initiated the conversation in the first place. If Dr. Lutz's opinion was not based on the assumption of a head injury, it would be odd to ask him to revise the opinion to account for the lack of a head injury.

4

ORDERED that the decision of the ALJ is REVERSED and the case is

REMANDED to the Commissioner for further consideration, pursuant to sentence four of

42 U.S.C. § 405(g). The Clerk of the Court is directed to enter a final judgment pursuant to

Rule 58 of the Federal Rules of Civil Procedure.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: June 3, 2005  
Jefferson City, Missouri